KATHERINE MANNION, respondent,

*v.*

GREENBROOK HOTEL, INC., appellant.

[Submitted May 31st, 1946.   Decided September 13th, 1946.]

On appeal from an order of the Court of Chancery, in which court the following opinion was filed: ·

"The object of the bill in this cause is to enjoin the defendant from violating certain covenants of a lease. The complainant obtained an order directing the defendant to show cause why immediate restraint operative *pendente lite* should not be imposed. The defendant not only resisted the application for the preliminary relief, but concurrently challenged the sufficiency of the bill pursuant to rule 69. Although the bill is essentially one for an injunction, I resolved to deny the request for temporary restraint and nevertheless retain the bill until final hearing. In suits for injunctions, such action is no longer novel or particularly unique. *McCarter* v. *Dungan, 74 N. J. Eq. 251; 68 Atl. Rep. 1096.* The defendant, apprehending that it is aggrieved by the denial of its motion to strike the bill, has taken an appeal; hence this memorandum of the reasons for the course I pursued.

"The covenants which in the prosecution of its motion the defendant acknowledges it made and now intends to infringe are three in number:

" 'Covenant 1: The party of the second part agrees that he will not during the term of this lease, nor at any time while he shall hold a municipal license for retail distribution of liquors in the Borough of Middlesex assign or negotiate any transfer of any such license without having first obtained in writing the approval therefore from the party of the first part. This covenant is made as being of the essence of this contract of lease.

" 'Covenant 2: And the party of the second part does further covenant and agree that at the close of each license period he shall during the term of this lease or any renewal or extension thereof make application in due time to the municipal authorities of the Borough of Middlesex for a renewal of the retail distribution liquor license held by the party of the second part with respect to the demised premises.

" 'Covenant 3: The party of the second part, in consideration of the covenants hereof, especially agrees with the party of the first part that he will not engage in the business of retail distribution of alcoholic beverages within the Borough of Middlesex for a period of two (2) years from the expiration of this contract of lease or any renewal or extension thereof.'

"It was perceived that the first two covenants (Nos. 1 and 2) might well be regarded as inimical to the policy of our pertinent statutory law and therefore unenforceable. *R. S. 33:1–26; N. J. S. A. 33:1–26; Walsh* v. *Bradley, 121 N. J. Eq. 359; 190 Atl. Rep. 88; Lachow* v. *Alper, 130 N. J. Eq. 588; 23 Atl. Rep. (2d) 595.* The public policy, however, reflected by the cited cases arises from the explicit composition of the statute, wherein it is ordained that those licensed to sell intoxicating beverages shall hold their special privileges free from the control of other persons, and that such licenses shall not possess all the common elements of transferable property. The legislative policy is limitational, but it was not intended to abominate all the contractual or legal obligations of such licensees in anywise related to the business of selling liquor.

"The defendant addressed its motion to the bill in its entirety, a motion which, if granted, would, practically speaking, remove the bill from the court and bring the entire cause to an end. Consequently, the possible validity and effectiveness of the third covenant could not be ignored. I am unable to discern in the third covenant, if it is dislocated from the other, anything that is manifestly unreasonable in its restrictive character or offensive to public policy. Its ancillary attachment to the purchase of the tenancy is obvious. Of itself, it contains nothing more than the negative obligation against prospective business competition intrinsic in the ordinary run of such stipulations. To suggest that a person cannot lawfully agree to abstain from engaging in the business of selling liquors merely because its pursuit is under governmental supervision and requires a license, is fantastic. Lawyers, physicians, dentists, pharmacists, morticians, and indeed beauticians act under the authority of a license, and yet they are undoubtedly bound by their restrictive covenants

if otherwise valid. For example, *Marvel* v. *Jonah, 83 N. J. Eq. 295; 90 Atl. Rep. 1004.*

"Then, too, where contracts include distinct and separable obligations, some of which are legal and some prohibited, the legal obligations are nevertheless enforceable upon proper proofs. *Trenton Potteries Co.* v. *Oliphant, 58 N. J. Eq. 507, 519; 43 Atl. Rep. 723; Nachamkis* v. *Goldsmith, 101 N. J. Law 356; 128 Atl. Rep. 238.*

"In a suit to enforce a restrictive covenant in equity, it is not always prudent to determine the fairness of the protection and the reasonableness of the covenant solely from its language as reproduced on the face of the bill. *Yanko* v. *Goldberg, 98 N. J. Eq. 536; 131 Atl. Rep. 513.* Nor is it always discreet to decide whether several covenants, some affirmative and others negative in import, were intended to be interfused or separable, solely from their contiguity in the written instrument. Certainly, where the question is fairly debatable, consideration should be given to the factual conditions and circumstances amid which the covenants were created, and to the evident purpose which the parties contemplated the respective covenants would accomplish. *Meaney* v. *Stork, 80 N. J. Eq. 60, 65; 83 Atl. Rep. 492; affirmed, 81 N. J. Eq. 210; 86 Atl. Rep. 398.* Such an inquiry can be appropriately accomplished at final hearing.

"The motion exhibited an illustration of a case where the defendant (in reality the individuals comprising it) undoubtedly manipulated the covenants to achieve a desired bargain. The defendant's avowed intention to now repudiate its previous promises and its request promptly to be relieved of the responsibility of defending its conduct were not factors likely to allure a court of equity.

"Demurrers or their modern equivalent often present purely academic questions denuded of the factual outbranches of the case which are frequently so helpful and elucidative in a just and equitable solution of the real controversy. *Commonwealth Title, &c., Co.* v. *New Jersey Lime Co., 86 N. J. Eq. 450, 457; 100 Atl. Rep. 52.* Motions to strike pleadings are expedients to prevent, as Mr. Justice Case stated, justice from being impeded 'by the barnacles of false pleadings,' and like-

wise I may add by the declaration of causes of action clearly and palpably frivolous. *Datz* v. *Barry, 115 N. J. Eq. 84* (at *p. 87*); *169 Atl. Rep. 685.*

"Fundamentally and traditionally, those who invoke the aid of a court of equity should be afforded the opportunity to be fully and completely heard if there is any reasonable probability that a denial of that privilege might unjustly and inconsiderately deprive them of the preventive or remedial aid of the court. And so, the power to grant or to deny motions to strike bills in Chancery has been entrusted to the sound discretion of the Chancellor. *National Home, &c., Inc.,* v. *New York Sash, &c., Inc., 135 N. J. Eq. 150; 36 Atl. Rep. (2d) 894.*

"In the present cause, I deemed the right of the complainant to enforce the covenants to be controvertible, and in obedience to familiar principles preliminary injunctive relief was refused. For the reasons herein stated, the motion which, in effect, would precipitantly dismiss the entire cause was denied."

*Messrs. Herrigel, Lindabury & Herrigel* (*Mr. Louis J. Dughi,* of counsel), for the appellant.

*Mr. Philip Blacher,* for the respondent.

PER CURIAM.

The order appealed from is affirmed, for the reasons stated in the opinion filed in the Court of Chancery.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, BODINE, DONGES, HEHER, PERSKIE, COLIE, OLIPHANT, WACHENFELD, WELLS, DILL, FREUND, McGEEHAN, McLEAN, JJ. 14.

*For reversal*—None.